UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN STEAMSHIP OWNERS
MUTUAL PROTECTION &
INDEMNITY ASSOCATION, INC.,
                              Plaintiff,

-v-

TRIUMPH MARITIME LTD. and
DANMAR SHIPMANAGEMENT, LTD.,
                              Defendants.

18-CV-8615 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

On September 20, 2018, Plaintiff American Steamship Owners Mutual Protection & Indemnity Association, Inc. (the "American Club") filed this breach of contract action against Defendants Triumph Maritime Ltd. and Danmar Shipmanagement, Ltd. (Dkt. No. 1 ("Compl.").) Plaintiff has served both Defendants. (Dkt. Nos. 10–13.) Defendants have not answered the complaint or otherwise appeared in this action. A certificate of default has been issued as to each Defendant. (Dkt. Nos. 17–18.) Plaintiff now moves for default judgment under Federal Rule of Civil Procedure 55(b). (Dkt. No. 21.) For the reasons that follow, the motion is granted.

**I.    Background**

For purposes of deciding this motion, this Court accepts as true all factual allegations in the American Club's complaint. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam).

From February 20, 2018, to May 13, 2018, the American Club provided marine insurance to Defendants, including for their vessel the M/V Triumph.[1] (Compl. ¶ 8.) In March 2018, the American Club requested payment for premiums from Defendants in the amount of $31,250.00. (*See* Compl. ¶ 11.) Despite repeated demands for payment, Defendants failed to pay any of the premiums it owed. (Compl. ¶ 12.) Around May 13, 2018, as a result of Defendants' nonpayment, the American Club terminated Defendants' insurance coverage. (Compl. ¶ 13.) Because the insurance coverage was terminated within the year, the American Club calculated the prorated premiums due to be $24,712.33. (Compl. ¶ 14.) In addition, following the termination of the insurance coverage, the American Club issued a request for a termination premium in the amount of $4,942.46 that must be paid when coverage ceases for an insured party to "be released from liability for any future additional premiums that may become due in a given policy year." (Compl. ¶ 15.) While the American Club has demanded payment for the full $29,654.79 in unpaid premiums, Defendants have not paid to date. (Compl. ¶ 17.)

Around August 14, 2017, the M/V Triumph arrived at the port in Ensenada, Mexico to make repairs to its main engines. (Compl. ¶ 19.) Sometime later, Defendants failed to pay wages to the vessel's crew members. (Compl. ¶ 20.) Ultimately, Defendant Triumph Maritime Ltd. abandoned the vessel and her crew in Ensenada. (*Id.*) Around March 23, 2018, the ship's Master petitioned the Harbor Master at Ensenada for assistance due to Defendants' nonpayment of wages and his concerns about the safety of the crew onboard. (Compl. ¶ 22.) Ultimately, the Harbor Master demanded that Defendants disembark and substitute the crew onboard by May 4, 2018. (Compl. ¶ 25.) Defendants failed to do so. (*Id.*) As a result, Mexican immigration

---

[1] Defendant Triumph Maritime Ltd. is the registered owner of the M/V Triumph. (Compl. ¶ 5.) Defendant Danmar Shipmanagement Ltd. is the manager of the M/V Triumph. (Compl. ¶ 6.)

authorities ordered the immediate disembarkation and repatriation of the crew. (Compl. ¶ 26.) The crew members were repatriated on May 8, 2018. (*Id.*) The American Club was presented with claims for outstanding wages and repatriation costs. (Compl. ¶¶ 27–28.) The American Club paid those claims, which totaled $350,074.63. (Compl. ¶¶ 30, 32.) Pursuant to the insurance contract at issue, Defendants were required to reimburse the American Club for these costs. (Compl. ¶ 31.) However, despite repeated demands for payment, Defendants have not reimbursed the American Club to date. (Compl. ¶ 35.)

## II. Legal Standard

When a defendant "has failed to plead or otherwise defend" a lawsuit, that defendant is in default and is deemed, for the purposes of liability, to have admitted all well-pleaded allegations in the complaint. *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 343–44 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 55(a)). At that point, the plaintiff is entitled to default judgment if the complaint's allegations "establish [the defendant's] liability as a matter of law." *Id.* at 344 (alteration in original) (quoting *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009)).

In contrast to the facts supporting liability, however, "the amount of damages" alleged in the complaint "are not deemed true" in the event of a default. *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (quoting *Credit Lyonnais Sec. (USA) v. Alcantara*, 183 F.3d 151, 152 (2d Cir. 1999)). Rather, after a court has determined that entry of default judgment against a defendant on a particular claim is appropriate, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty" by "determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." *Id.* (quoting *Credit Lyonnais,* 183 F.3d at 152).

3

**III.    Discussion**

The American Club has asserted a breach of contract and an account stated claim against Defendants in this action. (Compl. ¶¶ 38–45.)[2] This Court has subject-matter jurisdiction over these claims under 28 U.S.C. § 1333, because "[f]ederal admiralty jurisdiction extends to cases involving marine insurance contracts." *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 121 (2d Cir. 2001). And this Court has personal jurisdiction over Defendants in connection with the American Club's claims by virtue of a contractual clause in which they agreed to "submit[] to the jurisdiction" of this Court. (*See* Dkt. No. 22-17 at 2.)

Under New York law, which governs the marine insurance agreement at issue here (*see* Dkt. No. 22-16), the elements of a breach of contract claim are "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages," *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).

The American Club has plainly alleged the existence of the contract. (*See* Compl. ¶¶ 8–10.) Further, it has alleged performance under the contract when it paid claims pursuant to the insurance agreement. (*See* Compl. ¶ 32.) The American Club properly alleged that Defendants breached the contract by failing to pay premiums and failing to reimburse the American Club for crew member wages and other expenses paid by the American Club on Defendants' behalf. (*See* Compl. ¶¶ 31–35.)

This leaves the question of damages. Even if a court concludes that a plaintiff has established the fact of a defaulting defendant's liability, that court "must 'conduct an inquiry to ascertain the amount of damages with reasonable certainty.'" *Andrews v. 27 Red Music Publ'g,*

---

[2] The American Club's account stated claim is for damages that are encompassed by the breach of contract claim. (*See* Compl. ¶¶ 43–45.) Accordingly, the account stated claim is not assessed here.

4

*LLC,* No. 15 Civ. 7544, 2019 WL 199893, at *5 (S.D.N.Y. Jan. 15, 2019) (quoting *Credit Lyonnais Sec.*, 183 F.3d at 155). Although this inquiry often calls for a hearing or additional briefing, these steps are "not necessary 'as long as [the Court] ensure[s] that there was a basis for the damages specified in the default judgment.'" *Friedman v. Mission of the Gabonese Republic*, No. 17 Civ. 8142, 2018 WL 3094917, at *3 (S.D.N.Y. June 20, 2018) (alterations in original) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

Here, the Court can easily determine the measure of the American Club's damages without further inquiry. Under New York Law, "[d]amages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 143 (2d Cir. 2016) (citation omitted). Defendants had an obligation to pay required premiums and reimburse the American Club for costs associated with the abandonment of the M/V Triumph. (*See* Compl. ¶¶ 16, 31.) In the complaint, the American Club alleges that Defendants failed to pay $29,654.79 in premiums and $350,074.63 in outstanding wages, repatriation expenses, and incidental costs flowing from the abandonment of the M/V Triumph. (Compl. ¶¶ 17, 32.) However, in its motion for default judgment, the American Club seeks to recover $351,990.63 in crew wages, repatriation expenses, and incidental costs. (Dkt. No. 23 at 4.) The difference of $1,916 represents additional expenses paid since the filing of the complaint. (Dkt. No. 23 at 4 n.2.)

However, "a default judgment must not . . . exceed in amount[] what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Second Circuit has underscored that notice of damages that comes at the inquest stage is insufficient. *See Silge v. Merz*, 510 F.3d 157, 161 (2d Cir.

2007). Instead, notice of the full extent of damages must be given to defendants "*before* the decision to default and be evident from the face of the complaint." *Id.* Because the complaint does not include these new expenses, the Court cannot grant the additional $1,916 in damages. However, it is clear that the American Club is entitled to $29,654.79 in unpaid premiums and $350,074.63 in unreimbursed outstanding wages, repatriation expenses, and incidental costs that were evident on the face of the complaint. (*See* Compl. ¶¶ 17, 32.)

The American Club also asserts a claim for interest. But again, the relief sought in the complaint and motion for default judgment diverge. In the complaint, the American Club alleged that the contract obligated Defendants to pay "interest at the rate of 1% per month . . . payable on any premium or other sums due to [The American Club] as from the due date of payment of such premium or other sums." (Compl. ¶ 37 (alterations in original).) It requests "interest at the rate contractually agreed to by the parties." (Compl. at 10.) In the motion for default judgment however, statutory prejudgment interest in the amount of 9% a year pursuant to N.Y. C.P.L.R. § 5004 is requested. (Dkt. No. 23 at 13–14.) This is likely an oversight, given that the contracted-for interest rate is higher than the statutory prejudgment interest available in this case.

Fortunately for the American Club, "it is well-established that when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in [N.Y. C.P.L.R. § 5004] . . . governs until . . . the contract is merged in a judgment." *NML Capital v. Republic of Argentina*, 621 F.3d 230, 240 (2d Cir. 2010) (citations and internal quotation marks omitted). "In breach of contract cases, prejudgment interest is awarded from the date of the breach." *Bison Capital Corp. v. ATP Oil & Gas Corp.*, 884 F. Supp. 2d 57, 59 (S.D.N.Y. 2012) (citation and internal quotation marks

6

omitted). Here, Defendants breached the contract for the first time on May 18, 2018, when it failed to pay the pro-rated premiums and termination premiums it owed in the amount of $29,654.79. (*See* Compl. ¶¶ 15–16.) Defendants breached the contract for the second time on July 9, 2018, when they received the invoices for the expenses the American Club incurred related to the abandonment of the M/V Triumph in the amount of $350,074.63. (*See* Compl. ¶¶ 33–35.) Accordingly, the American Club is entitled to 1% interest per month on $29,654.79 from May 18, 2018, to the date of this judgment. The American Club is further entitled to 1% interest per month on $350,074.63 from July 9, 2018, to the date of this judgment.

The American Club seeks an award of $18,324 in attorneys' fees and $2,936.42 in costs. (Dkt. No. 22-22; *see also* Compl. ¶¶ 46–48.) The insurance contract provided that the American Club has a right to "reasonable legal fees, collection expenses and other costs of recovering all amounts due from a Member or former Member plus interest . . . ." (Dkt. No. 22-2 at 4.) The American Club therefore has the contractual right to recover the fees and costs it incurred, provided such fees and costs are found by the Court to be reasonable. *See Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC,* No. 13 Civ. 6562, 2015 WL 4392081, at *7 (S.D.N.Y. July 15, 2015). The party seeking attorneys' fees generally must submit "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of work done." *Scott v. City of New York,* 626 F.3d 130, 133 (2d Cir. 2010) (per curiam) (citation omitted). The Court can assess the reasonableness of the attorneys' fees based on the American Club's submissions. (*See* Dkt. No. 22-22.)

"[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation and internal quotation marks omitted). A

reasonable hourly rate is based on "the prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Financial, Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012) (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)). "A court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district, as well as on evidence proffered by the parties." *Adorno v. Port Authority*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).

The American Club is represented in this action by Freehill Hogan & Mahar LLP ("Freehill"). The lead attorney on this case was Manuel Molina, a partner who billed at a rate of $305 per hour. (*See* Dkt. No. 22-22 at 2.) Eric Matheson, another partner, billed at a rate of $275 per hour. (*Id.*) Anthony Russo, a clerk, billed at rate of $150 per hour. (*Id.*) Cody King, an associate, billed at rate of $175 per hour. (*Id.*) Jacqueline Singer, a paralegal, billed at a rate of $150 per hour. (*Id.*) And Joan Sorrentino, another paralegal, billed at rate of $155 per hour. (*Id.*) Freehill's rates in this case are reasonable in light of hourly rates that have been approved by judges in this District. *See, e.g.*, *Sprint Commc'ns Co. L.P. v. Chong*, No. 13 Civ. 3846, 2014 WL 6611484, at *8 (S.D.N.Y. Nov. 21, 2014) (finding an hourly rate of $205 per hour to be a reasonable rate for a paralegal); *Cathay Bank v. Seo*, No. 06 Civ. 15445, 2009 WL 5341672, at *4 (S.D.N.Y. Dec. 16, 2009) (deeming reasonable $350 per hour for the lead attorney and $245 per hour for an associate reasonable in a breach of contract default).

Courts also assess the reasonableness of the hours by considering such factors as "the quality of counsel's work" and "the complexity of the issues." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987). "Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the

work produced, the Court should reduce the stated hours accordingly." *HTV Industries, Inc. v. Agarwal*, 317 F. Supp. 3d 707, 722 (S.D.N.Y. 2018).

Freehill seeks fees for 66.6 hours of work — 30.2 hours of which were spent on initial investigation, the complaint, and service of process abroad and 36.4 hours of which were spent on the motion for default judgment. (Dkt. No. 22-22 at 2.) While service of process may have been reasonably complicated by serving defendants abroad, this Court finds the number of hours spent on this case somewhat greater than reasonable. This was a "relatively straightforward contract claim . . . and a default by the defendant[s]." *See HTV Industries, Inc.*, 317 F. Supp. 3d at 724–25. That Freehill spent six more hours crafting a motion for default judgment that should rely heavily on the complaint is "duplicative." *See Seitzman*, 311 F.3d at 487. The 66.6 hours that Freehill spent on this case as a whole is "notably higher" than "amounts found reasonable in other breach-of-contract cases in which a default judgment was entered, after the defendant failed to defend the action." *Bank of Am., N.A. v. Brooklyn Carpet Exch., Inc.*, No. 15 Civ. 5981, 2016 WL 8674686, at *10 (S.D.N.Y. May 13, 2016), *report and recommendation adopted*, No. 15 Civ. 5981, 2016 WL 3566237 (S.D.N.Y. June 27, 2016) (finding over 70 hours unreasonable and collecting cases finding 13.3 to 20.6 hours reasonable). Accordingly, this Court applies a 20% across the board reduction to the $18,324.00 attorneys' fees sought, for a new total of $14,659.20.

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) (alteration in original). The Court finds that the costs that Freehill has expended are reasonable given that this action was brought against foreign defendants, which greatly

increased the cost of service. (*See* Compl. ¶¶ 5–6; Dkt. No. 22-22 at 3.)  Accordingly, Freehill is entitled to $2,936.42 in costs.  (Dkt. No. 22-22 at 3.)

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's motion for default judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 21, and enter judgment in favor of Plaintiff as follows: (i) $29,654.79, plus 1% interest per month from May 18, 2018, to the date of this judgment; (ii) $350,074.63, plus 1% interest per month from July 9, 2018, to the date of this judgment; (iii) $14,659.20 in attorneys' fees; and (iv) $2,936.42 in costs.

The Clerk of Court is further directed to close the case.

SO ORDERED.

Dated: November 26, 2019
        New York, New York

_____
J. PAUL OETKEN
United States District Judge